LEWIS v. WITHERS.

(*Circuit Court, S. D. Mississippi.* November 25, 1890.)

TAXATION—ASSESSMENT—ALTERATION OF RETURN.

The unauthorized alteration by assessor of tax-payer's return for assessment, made according to original survey, to a description in new survey, whereby acreage of lots returned are decreased, and lots are added to cover balance, and assessed to unknown, without notice, and a payment on lots as returned, with offer to pay all taxes due, invalidates sale of such added lots.

(*Syllabus by the Court.*)

At Law.

*Baker & Reneau,* and *Nugent & McWillie,* for plaintiff.
*Calhoun, Green & Carson,* for defendant.

HILL, J. This is an action of ejectment, brought by the plaintiff against the defendant in the circuit court of Wilkinson county, and removed into this court, to recover the land described in the declaration, to which the defendant interposed the general issue. By written stipulation, a jury trial is waived, and the questions of fact, as well as the questions of law, are submitted to the court. The 80 acres of land for which this action is brought have been owned by the defendant for many years, and are included in lots 3 and 4 of section 22, township 3, range 5 west, in Wilkinson county, as shown by the tract-book of original entries, and were so entered by defendant's grantor in 1833 and 1835. The whole section was subdivided into lots 1, 2, 3, and 4. Lot No. 1 has never belonged to defendant, but lot No. 2 is, and long has been, owned by him. Lots 2, 3, and 4 were estimated to contain 262 acres, and were usually assessed by that description, and as containing that number of acres, except that in 1883 the number of acres was estimated at 260, and were given in by the agent of the defendant to the assessor for 1887 by the description of lot 2, 62 acres, lot 3, 80 acres, lot 4, 120 acres, making, together, 262 acres. There is marked in brackets on the line of lot No. 3 the figures 40 and letter A, and on the line of lot No. 4 the figures 80, letter A, but by whom placed there, or when, does not appear. The proof is that it is not in the handwriting of defendant, or his agent, and must have been by the assessor's deputy, or some one else. Some time in 1848 or 1849, the surveyor general was directed to resection the lands in Wilkinson county, which was done, and a map thereof filed in the land-office in Jackson, and by which lots 2, 3, and 4, above mentioned, were described as lots 2, 3, 4, 5, and 6, and by which the land in controversy was described as lots 5 and 6, each containing 40 acres, and being contained in lots 3 and 4, as described in the entry tract-book. In 1884, a copy of this map was procured, and placed in the office of the chancery clerk of said county, and, as the proof shows, has since been regarded as the official map of the county, for the guidance of the assessors, and others, but no order of the board of supervisors has ever been made adopting it, or requiring assessments

for taxes to be made of the land in the county, according to the designations and descriptions upon it. The first time any change was made in the description of the land in controversy was by the assessors in 1887, when it was described as lots Nos. 5 and 6, each containing 40 acres. Of this change, neither the defendant nor any agent of his had notice. Lots Nos. 2, 3, and 4 were assessed to defendant, and lots 5 and 6 to an unknown owner. Lots 2, 3, and 4 were valued at $9 per acre, and lots 5 and 6 at $1 per acre. Defendant paid the tax in due time, by his agent, on lots 2, 3, and 4. Other lands belonging to defendant were not put on the assessment roll or tax-book, but through the neglect or oversight of whom does not appear. But, the amount of the taxes for that year being so much less than usual, Mr. Koontz, the agent of defendant, supposing there must be some mistake about it, requested Mr. Carson, defendant's attorney, to go to Wilkinson county and look into the matter, and to ascertain the taxes due, if any, and pay the same, and for which he took the money with him, and ascertained the taxes due on other lands of the defendant, which had not been assessed to him, and paid the same. On the examination of the tax-books by Mr. Miller, the sheriff and tax collector's deputy, who was in charge of that business, and to whom Mr. Carson was referred by the sheriff as knowing more about it than himself, it was found that the taxes had been paid on lots 2, 3, and 4, the number of acres being described as 182, which Carson ascertained on the examination of the tax receipt, and called Miller's attention to it. Miller got the map in the office from which the assessor had made his description in making out his assessment roll, and found that lots 2, 3, and 4 contained 182 acres. Carson asked him how he accounted for the decrease in the acreage. He replied that Withers had been paying for years on land in the Mississippi river, but added, referring to the maps, that "these are the latest surveys, and are [as he supposed] correct." Carson looked at the map and saw lots 5 and 6 thereon, and asked who they belonged to. Miller replied: "I do not think they belong to Withers; I do not know. I do not think they were ever assessed to Mr. Withers." Carson, not being satisfied, and anxious to pay the taxes on all of Withers' land, examined his title-deeds, with the assistance of the circuit clerk, who was familiar with the records, to see if lots 5 and 6 belonged to Withers, never having heard of lots 5 and 6, and could not find them, and had no knowledge of any change in the maps, or description of the land. As all the deeds described the land as lots Nos. 2, 3, and 4, and by which they had before been assessed and known, he came to the conclusion that they did not belong to Withers, but was then prepared and anxious to pay the taxes, and never learned that they were the lands of Withers until this suit was brought, nor did defendant, or any of his agents. The taxes not being paid, the lands were sold, and purchased by plaintiff for between four and five dollars; and, not being redeemed within the time prescribed by law, the sheriff's deed to the land under the sale was delivered to the plaintiff, and is his only muniment of title. These are substantially the facts, as shown by the proof, so far as it is

necessary to a determination of the questions involved, which are whether or not the plaintiff, under these facts, is entitled to recover this land, with its rental value, from the defendant, and which must be determined according to the statutes of the state, as construed by the supreme court of the state. It is very clear to my mind that the non-payment of the tax was alone caused by the change made in the description of the land by the assessor, and without the knowledge or consent of the defendant, or any agent of his, and for which he is not in any way responsible; nor do I believe it makes any difference that the assessment roll, with the change, was reported to and confirmed by the board of supervisors. The defendant had a right to rely upon the description given by his agent, and that by which it had always before that time been known and assessed for taxes. Plaintiff relies upon section 516, Code 1880, which provides a form of receipt for taxes, and which shall be the only evidence of the payment of taxes due, and the decision of the supreme court of the state holding that this is the only evidence of such payment, unless lost or destroyed. But this is not a question of the payment of the tax, but of the correctness of the assessment,—the change in the description having been made without notice to the defendant or his agent, —and as to whether or not this change without notice is an excuse for the non-payment of the tax by the defendant. I am of opinion that this question has been settled in favor of the defendant by the supreme court of this state in the case of *Richter* v. *Beaumont*, 7 South. Rep. 357. The facts in that case were that, in the ancient division of the town of Ocean Springs, a lot of ground in the return for assessment was described as lot No. 6, and which was afterwards given a different description on a new map of the town, which was recognized by the citizens generally, and by the officials of the town; and, it being assessed for taxes under and by the description on the new map, and the taxes not being paid, the same was sold for the non-payment of the tax, and conveyed by the tax collector. The court held that, if the owner did not know of the new map and the change in the description of the ground, but had given it in as lot or part of lot No. 6 to the assessor, he would not be affected by the sale and conveyance. This decision is so just that I presume no court will hold to the contrary under a similar state of facts, and which, in my opinion, are the facts in the present case. To deprive the defendant of the title to this valuable tract of land under the facts stated, to say nothing about the few dollars paid, would certainly be a hardship and wrong, never contemplated by the legislature. Besides, the statute provides ample indemnity to the plaintiff by refunding to him all the money paid by him with 25 per cent. damages, and 10 per cent. per annum interest thereon, until paid, with a lien on the land until payment is made. The result is that the finding of the facts must be in favor of the defendant, and judgment that when the amount paid, with damages and interests, are refunded, he go hence with his costs.